UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHELLE L. DONOHUE,<br><br>              Plaintiff,<br><br>   v.<br><br>NANCY A BERRYHILL, Acting Commissioner of Social Security,<br><br>              Defendant. | CASE NO. 3:17-CV-05376-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff Michelle L. Donohue filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 8.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to provide specific and legitimate reasons, supported by substantial evidence, for giving limited weight to the medical opinion evidence. Had the ALJ properly considered the medical opinion evidence, the residual functional capacity ("RFC") may have

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On September 10, 2013, Plaintiff filed an application for SSI, alleging disability as of March 1, 2001. *See* Dkt. 11, Administrative Record ("AR") 25.[1] The application was denied upon initial administrative review and on reconsideration. *See* AR 25. A hearing was held before ALJ Cynthia D. Rosa on August 12, 2015. AR 46-84.

In a decision dated January 21, 2016, the ALJ determined Plaintiff to be not disabled. AR 25-40. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-4; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to provide specific and legitimate reasons to reject the opinions of three examining physicians: Dr. Jennifer Koch, Psy.D., Dr. Terilee Wingate, Ph.D., and Dr. Janis Lewis, Ph.D.; (2) failing to provide germane reasons to reject lay witness testimony; (3) failing to provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony; and (4) improperly assessing Plaintiff's RFC, the hypothetical questions posed to the vocational expert, and the subsequent Step Five findings. Dkt. 13, pp. 1, 4-17.

---

[1] When reviewing this case, the Court found the Judge's courtesy copy of the administrative record was missing approximately seventy-five pages. These pages are included in the electronic administrative record filed on CM/ECF. The Court emailed the parties' attorneys alerting them of this error and requesting them to confirm the parties agree the electronic copy is the complete, certified copy of the administrative record. Justin L. Martin, attorney for Defendant, responded that the electronic version of the Administrative Record – found at Dkt. 11 – is a complete, certified copy. Elie Halpern, Plaintiff's counsel, did not respond. The Court concludes Dkt. 11 contains a complete, certified copy of the Administrative Record.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I.     Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff first argues the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject evidence from three examining physicians. Dkt. 13, pp. 1, 4-14.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

   A.   Dr. Koch

Plaintiff maintains the ALJ erred when she gave little weight to Dr. Koch's opinion. Dkt. 13, pp. 4-7.

1         Dr. Koch conducted a psychological and psychiatric evaluation of Plaintiff on September 12, 2013. AR 401-06. Dr. Koch's evaluation included a record review, clinical interview, and mental status exam. AR 401-06. Dr. Koch opined Plaintiff had moderate and marked limitations in several areas of basic work activities. AR 404. For example, Dr. Koch found Plaintiff moderately impaired in her ability to learn new tasks, adapt to changes in a routine work setting, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. AR 404. Furthermore, Dr. Koch opined Plaintiff had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 404. Dr. Koch also found Plaintiff markedly limited in her ability to communicate and perform effectively in a work setting and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 404.

        The ALJ summarized Dr. Koch's findings, and then stated:

> Although most of the limitations assessed by Dr. Koch are addressed in the RFC, little weight is given to her opinion of marked limitations. The claimant's presentation and her report of symptoms to Dr. Koch were quite extreme when compared to the record just prior to Dr. Koch's evaluation and shortly after her evaluation. For example, on May 30, 2013, the claimant presented to St. Peter Hospital again for a refill of her medication. She reported she had run out of her medication two days earlier. She reported she was feeling a little anxious. Her mood and affect were normal. She was interactive. She had no flight of ideas or suicidal or homicidal thoughts (Ex 5F). At an appointment at Sea Mar on September 19, 2013, the claimant denied feeling depressed in the previous two weeks. Her mood and affect were appropriate (Ex 8F/12).

AR 35-36.

        The ALJ's sole reason for giving little weight to Dr. Koch's opinion was because she found it "quite extreme" compared to contemporaneous treatment records. AR 35-36. An ALJ can discount a medical opinion if it is inconsistent with contemporaneous treatment records. *Parent v. Astrue*, 521 Fed. Appx. 604, 608 (9th Cir. 2013) (citing *Carmickle v. Comm'r of Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 20008)). Nonetheless, an ALJ cannot use a conclusory statement to reject a physician's findings. *See Embrey*, 849 F.2d at 421-22. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct.

*Id.* (internal footnote omitted).

Here, the ALJ gave little weight to Dr. Koch's opinion because she found it inconsistent with May and September 2013 records which discussed Plaintiff's mood, affect, and thoughts. AR 35-36. Yet the ALJ provided no explanation of how the notes in these records regarding Plaintiff's mood, affect, and thoughts specifically contradicted Dr. Koch's findings regarding Plaintiff's ability to conduct basic work activities. *See* AR 35-36. Hence, the ALJ's conclusory statement was not a specific, legitimate reason to give little weight to Dr. Koch's opinion. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts she claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings she rejects").

The ALJ erred by giving little weigh to Dr. Koch's opinion for being inconsistent with contemporaneous records because her reasoning was conclusory. The Court therefore finds the ALJ has not provided any specific and legitimate reason, supported by substantial evidence, to give little weight to Dr. Koch's opinion. Accordingly, the ALJ erred.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

*Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ properly considered all of Dr. Koch's opined limitations, the RFC may have included additional limitations. For example, the RFC may have included the limitations that Plaintiff would struggle performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances without special supervision, and completing a normal work day and work week without interruptions from psychologically based symptoms. The RFC did not contain these limitations. *See* AR 30. Thus, if limitations reflecting Dr. Koch's findings were included in the RFC and the hypothetical questions posed to the vocational expert, the ultimate disability determination may have changed. Accordingly, the ALJ's failure to properly consider Dr. Koch's opinion was not harmless and requires reversal.

B. Dr. Wingate

Plaintiff next argues the ALJ erred in assigning little weight to Dr. Wingate's opinion. Dkt. 13, pp. 7-11.

Dr. Wingate conducted a psychological and psychiatric evaluation of Plaintiff, which included a clinical interview, mental status exam, Beck Anxiety Inventory, and Beck Depression Inventory. AR 464-72. Dr. Wingate opined Plaintiff had several limitations in her ability to conduct basic work activities, such as moderate limitations in her ability to make simple work-related decisions, adapt to changes in a routine work setting, and ask simple questions or request assistance. AR. 466. Dr. Wingate also opined Plaintiff had marked limitations in six areas:

understanding, remembering, and persisting in tasks by following detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual without special supervision; learning new tasks; communicating and performing effectively in a work setting; completing a normal work day and work week without interruptions from psychologically based symptoms; and maintaining appropriate behavior in a work setting. AR 466. Furthermore, Dr. Wingate opined Plaintiff's memory was outside of normal limits based on a word recollection exercise that she conducted during the mental status exam. *See* AR 467-68.

The ALJ discussed some of Dr. Wingate's opinions and then stated:

> Little weight is given to Dr. Wingate's evaluation. (1) As noted above, the claimant was not honest with Dr. Wingate about her social activities. Despite her recent admission to the [the Cooperative Disability Investigations Unit ("CDIU")] investigator that she was doing activities such as going on dating sites and dating, going to church, going to meetings, and going on Facebook, she told Dr. Wingate that she did not have any friends. (2) Further, she has inconsistently reported her impairments and symptoms and Dr. Wingate was not privy to this information. For example, she told Dr. Wingate she had memory problems and had a memory evaluation the previous week. Yet, she also told Dr. Wingate that she reads a lot. However, Dr. Wingate did not have Dr. [Carla] van Dam's evaluation and was presumably unaware that the claimant told Dr. van Dam her problem was reading comprehension, which is inconsistent with her report to Dr. Wingate that she reads a lot and her testimony that she plays games on her telephone for hours. (3) Dr. Wingate appears to have based her opinion on the fact the claimant reported memory problems and then could not recall any of 4 objects after a five minute delay. Yet, the overall objective evidence including the claimant's activities and the CDIU investigators observations show that the claimant could perform work consistent with the above RFC (Ex 11F).

AR 36 (numbering added); *see also* AR 415-29 (CDIU report).

First, the ALJ gave little weight to Dr. Wingate's opinion because she found that, in comparison to the CDIU report,[2] Plaintiff "was not honest with Dr. Wingate about her social

---

[2] The Social Security Act authorizes the Commissioner to conduct investigations as the Commissioner deems them necessary or proper. *Elmore v. Colvin*, 617 Fed. Appx. 755, 757 (9th Cir. 2015) (citing 42 U.S.C. § 405(b)(1)). As a result, the Commissioner may request CDIU detectives investigate disability claims. *See id.*

activities." AR 36. Nevertheless, the ALJ failed to explain how Plaintiff's alleged dishonesty about her social activities is relevant to Dr. Wingate's opinions regarding her ability to conduct basic work activities. *See* AR 36. For example, the ALJ did not explain how Plaintiff's alleged dishonesty about having friends is relevant to her being limited in her ability to adapt to changes in a routine work setting or maintaining appropriate behavior. *See* AR 36, 466. Because the ALJ failed to explain her reasoning, this was not a specific, legitimate reason to give little weight to Dr. Wingate's opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Second, the ALJ gave little weight to Dr. Wingate's opinion because Dr. Wingate "was not privy" to allegedly inconsistent reports Plaintiff gave to Dr. van Dam. AR 36. Defendant concedes this reason was not a sufficient basis to discount Dr. Wingate's opinion. Dkt. 14, p. 8. As such, the Court will not discuss the ALJ's second reason for giving little weight to Dr. Wingate's opinion.

Third, the ALJ gave little weight to Dr. Wingate's findings regarding Plaintiff's memory problems because the ALJ found these findings inconsistent with "the overall objective evidence," including Plaintiff's activities and the CDIU report. AR 36. Once again, however, the ALJ rejected Dr. Wingate in a conclusory manner, as she failed to explain how Dr. Wingate's opinion on Plaintiff's memory specifically contradicted Plaintiff's activities or the CDIU report. The ALJ's error is heightened by the fact that Dr. Wingate conducted memory testing as part of the mental status exam; hence, Dr. Wingate's opinion on Plaintiff's memory was backed by objective evidence, contrary to the ALJ's assertion that this opinion was inconsistent with

objective evidence. Therefore, the ALJ failed to provide a specific, legitimate reason to give little weight to Dr. Wingate's opinion regarding Plaintiff's memory problems.

Had the ALJ properly considered Dr. Wingate's opined limitations, the RFC may have included additional limitations. For example, the RFC may have included that Plaintiff would be limited in performing activities within a schedule, maintaining regular attendance, being punctual without special supervision, learning new tasks, and completing a normal work day and work week without interruptions from psychologically based symptoms. The RFC did not contain these limitations. AR 30. Accordingly, if limitations reflecting Dr. Wingate's opinion were included in the RFC and the hypothetical questions posed to the vocational expert, the ultimate disability determination may have changed. As such, the ALJ's failure to properly consider Dr. Wingate's opinion was not harmless and requires reversal.

C. Dr. Lewis

Plaintiff also asserts the ALJ failed to provide a specific and legitimate reason to give little weight to Dr. Lewis's opinion. Dkt. 13, pp. 11-14.

Dr. Lewis conducted a psychological evaluation of Plaintiff on April 13, 2015. AR 531-60. Dr. Lewis reviewed ten records as part of her evaluation, including a review of other psychological evaluations and the CDIU report. AR 532. In addition, Dr. Lewis interviewed Plaintiff and conducted a mental status exam. AR 531-60.

Dr. Lewis made many findings regarding Plaintiff's functional limitations. For instance, Dr. Lewis opined Plaintiff had marked limitations in activities of daily living, difficulties maintaining social function, and difficulties maintaining concentration, persistence, or pace due to her mental disorders. AR 553. Dr. Lewis also opined Plaintiff's "hypervigilance and dramatic presentation" would limit her ability to be employed "around many men." AR 541.

1   Furthermore, Dr. Lewis opined Plaintiff would be precluded from
performance/productivity for 10% of an eight-hour work day due to her limitations in her ability
to remember locations and work-like procedures, carry out short and simple instructions, and be
aware of normal hazards and take appropriate precautions. AR 557-59. Dr. Lewis also opined
Plaintiff would be precluded from performance/productivity for 20% of a work day due to
several limitations, such as her limited ability to sustain an ordinary routine without special
supervision and accept instructions and respond appropriately to criticism from supervisors. *See*
AR 557-59. Moreover, Dr. Lewis opined Plaintiff would be precluded from
performance/productivity for 30% of a work day due to numerous limitations, including
limitations in her ability to maintain attention and concentration for extended periods, complete a
normal workday and workweek without interruptions from psychological symptoms, and
perform at a consistent pace without unreasonable rest periods. AR 558.

After summarizing her findings, Dr. Lewis determined Plaintiff could not sustain
attention for full-time employment. AR 542. Dr. Lewis also concluded Plaintiff would miss an
average of four days per month of work due to anxiety, conflicts with coworkers, and depression.
AR 560.

The ALJ discussed some of Dr. Lewis's opinion and then gave it "little weight," stating:

> (1) The claimant's presentation was very different from her presentation during
> the CDIU and is not reflective of her overall functioning. (2) Further, her ability
> to perform tasks designed to test concentration such as serial threes and serial
> sevens varied significantly from her ability on exam with Dr. van Dam. (3) Of
> particular note, the claimant was not taking her ADHD medication at the time of
> the evaluation with Dr. Lewis. The claimant did not admit this to Dr. Lewis even
> though a few days prior to the evaluation she told her counselor she had lost her
> medication and she told her prescriber two days later that she had lost her
> medication and was a wreck during the evaluation with Dr. Lewis. (4) In addition
> to not being on her medication, the claimant reported to her counselor that she
> was anxious and that her attorney had told her the exam with Dr. Lewis was going
> to be of benefit to her. This evaluation was apparently set up to specifically

counter the observations of the CDIU investigator as well as the activities the claimant reported to the investigator as Dr. Lewis references the CDIU during her evaluation. (5) Further, Dr. Lewis' comment about the claimant not being able to work with men is inconsistent with the claimant's ability to go on dates with new men. As noted at a counseling appointment in May of 2015, the claimant talked about a new relationship that she was excited about (Ex 18F/14). This had ended by June of 2015, but by July of 2015, she had another new boyfriend (Ex 18F/12).

AR 37 (numbering added).

All five of the ALJ's reasons for discounting Dr. Lewis's opinion were error. The ALJ first gave little weight to Dr. Lewis's opinion because she found it inconsistent with the CDIU report and Plaintiff's functioning. AR 37. However, the ALJ once again failed to provide reasoning behind her assertion, as she failed to explain how Dr. Lewis's findings specifically conflicted with the CDIU report and Plaintiff's functioning. *See* AR 37; *see also Yeakey v. Colvin*, 2016 WL 4649653 (W.D. Wash. Sept. 7, 2016) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998); *Embrey*, 849 F.2d at 421) (an ALJ errs when she makes a "blanket statement" rejecting a doctor's opined limitations based on a CDIU report without explanation or citation to specific evidence in the record).

Additionally, in discounting Dr. Lewis's opinion based on the CDIU report, the ALJ gave greater weight to the CDIU report than Dr. Lewis's opinion. Nonetheless, the ALJ failed to explain why the CDIU report should be given greater weight than Dr. Lewis's opinion. Hence, the ALJ erred, as she failed to provide a specific and legitimate reason, supported by substantial evidence, to reject Dr. Lewis's opinion in light of the CDIU report and Plaintiff's functioning. *See Lester*, 81 F.3d at 830-31 (an ALJ must provide "specific and legitimate reasons" for rejecting an examining physician's opinion); *Embrey*, 849 F.2d at 421-22 (conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion).

Second, the ALJ gave little weight to Dr. Lewis's opinion because she found Plaintiff's testing results "varied significantly from her ability on exam with Dr. van Dam." AR 37. As previously explained, an ALJ must provide a specific and legitimate reason to give greater weight to one examining physician over another. *Lester*, 81 F.3d at 830-31. The ALJ's conclusory decision to give greater weight to Dr. van Dam's report over Dr. Lewis's report was therefore error, as she failed to give any reason as to why Dr. van Dam's report deserved greater weight.

Third, the ALJ gave little weight to Dr. Lewis's opinion because Plaintiff was not on ADHD medication at the time of the evaluation and Plaintiff "did not admit this to Dr. Lewis." AR 37. Defendant maintains, citing Ninth Circuit authority, this was a valid reason to reject Dr. Lewis's opinion because impairments that can be controlled with medication are not disabling. Dkt. 14, pp. 9-10 (citing *Warre v. Commissioner*, 439 F.3d 1001, 1006 (9th Cir. 2006)). Here, however, the ALJ did not say she rejected Dr. Lewis's opinion because Plaintiff's impairments could have been controlled by medication; rather, the ALJ rejected Dr. Lewis's opinion because she claimed Plaintiff was dishonest with Dr. Lewis regarding her medications. *See* AR 37. Regardless, the ALJ's assertion was not supported by substantial evidence, as the ALJ did not cite evidence showing Dr. Lewis relied on the fact that Plaintiff may have been on ADHD medication. *See* AR 37. In fact, Dr. Lewis noted that while Plaintiff was recently prescribed Adderall, Plaintiff told Dr. Lewis she was "not certain if she [was] fully medication compliant." AR 535. Hence, contrary to the ALJ's assertion, Dr. Lewis was on notice that Plaintiff may not have been compliant with her ADHD medication. Accordingly, this was not a specific, legitimate reason to reject Dr. Lewis's opinion under these circumstances.

1    Fourth, the ALJ gave little weight to Dr. Lewis's opinion because she found the
2    evaluation with Dr. Lewis "was apparently set up to specifically counter" the CDIU report. AR
3    37. An ALJ cannot reject a medical opinion based on the purpose for which it was obtained. *See*
4    *Lester*, 81 F.3d at 832 ("[t]he purpose for which medical reports are obtained does not provide a
5    legitimate basis for rejecting them"); *see also Reddick*, 157 F.3d at 726-727 (rejecting an ALJ's
6    assertion that a physician was biased in favor of a claimant where "nothing in the record"
7    showed the physician lacked objectivity). Here, the ALJ rejected Dr. Lewis's opinion based on
8    the fact that it may have been set up to counter the CDIU report. AR 37. Because the ALJ
9    rejected Dr. Lewis's opinion based on its purpose and no evidence in the record suggested Dr.
10   Lewis lacked objectivity, this was not a specific, legitimate reason to discount this opinion.

11   Lastly, the ALJ gave little weight to Dr. Lewis's opinion because she found the doctor's
12   finding about Plaintiff "not being able to work with men" inconsistent with her ability to go on
13   dates with men. AR 37. Despite the ALJ's assertion, Dr. Lewis did not opine Plaintiff could not
14   be around any men; rather, she opined Plaintiff would be limited in "employment around *many*
15   men." AR 541 (emphasis added). Thus, Plaintiff's inability to work around *many* men is not
16   necessarily inconsistent with her ability to go on a date with *one* man. As such, this reason for
17   rejecting this part of Dr. Lewis's opinion was not supported by substantial evidence.

18   For the above stated reasons, the Court concludes the ALJ failed to provide specific and
19   legitimate reasons, supported by substantial evidence, to give little weight to Dr. Lewis's
20   opinion. The ALJ therefore erred. Had the ALJ properly considered Dr. Lewis's opinion, the
21   RFC and hypothetical questions posed to the vocational expert may have included additional
22   limitations. For example, the RFC and hypothetical questions may have included that Plaintiff
23   would be limited in her ability to sustain an ordinary routine without special supervision, have
24

difficulty maintaining attention and concentration for extended periods, and miss an average of four work days per month. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

## II. Whether the ALJ provided proper reasons for discounting Plaintiff's subjective symptoms testimony and lay witness evidence.

Plaintiff further asserts the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Dkt. 13, pp. 15-16. Plaintiff also asserts the ALJ failed to provide germane reasons to reject lay witness testimony from Plaintiff's mother and aunt. *Id.* at 14-15. The Court concluded the ALJ committed harmful error in assessing the medical opinions of Drs. Koch, Wingate, and Lewis. *See* Section I, *supra*. Because the ALJ's reconsideration of the medical evidence may impact her assessment of Plaintiff's subjective symptom testimony and the lay witness testimony from Plaintiff's mother and aunt, the ALJ must reconsider this testimony on remand.

The Court also notes, on March 28, 2016, the Social Security Administration changed the way it analyzes a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016); 2016 WL 1237954 (March 24, 2016). The term "credibility" will no longer be used. 2016 WL 1119029 at *1. Further, symptom evaluation is no longer an examination of a claimant's character. *See id*. at *10 ("adjudicators will not assess an individual's overall character or truthfulness"). The ALJ's decision here – dated January 21, 2016 – was issued before SSR 16-3p became effective. Thus, the ALJ did not err by failing to apply SSR 16-3p. However, on remand, the ALJ is directed to apply SSR 16-3p when evaluating Plaintiff's subjective symptom testimony.

### III. Whether the ALJ properly assessed Plaintiff's RFC, the hypothetical questions posed to the vocational expert, and the ultimate Step Five findings.

Moreover, Plaintiff maintains that in light of the ALJ's errors, the "RFC and hypothetical questions were incomplete," and as such, the Step Five findings were not supported substantial evidence. Dkt. 13, p. 17 (citation omitted). The Court concluded the ALJ committed harmful error when she failed to properly consider the medical opinion evidence. *See* Section I, *supra*. Accordingly, the ALJ must reassess the RFC on remand. *See* SSR 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, she must also re-evaluate the findings at Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform in light of the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider two doctors' findings).

### IV. Whether the case should be remanded for an immediate award of benefits.

Lastly, Plaintiff asserts this matter should be remanded with a direction to award benefits. Dkt. 13, p. 17.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when

evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined, on remand, the ALJ must re-evaluate this entire matter properly considering the medical opinion evidence, lay witness testimony, Plaintiff's testimony, and the Step Five findings. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 8th day of November, 2017.

_____
David W. Christel
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 16